UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KELLY SEALE and DAVID SEALE,
                              Plaintiffs,

v.                                                      5:11-CV-0278
                                                        (GTS/ATB)

MADISON CNTY.; ALLEN RILEY, Individually
and in his Official Capacity as Madison Cnty.
Sheriff; MATTHEW EPISCOPO, Individually and
in his Official Capacity as Captain of the Madison
Cnty. Sheriff's Ofc.; DOUG BAILEY, Individually
and in his Official Capacity as Former Undersheriff
for Madison Cnty.; RONALD CARY, Individually
and in his Official Capacity as Former Sheriff for
Madison Cnty.; and RYAN AYLWARD, Individually
and in his Official Capacity as Coordinator of Labor
Relations for Madison Cnty.,
                              Defendants.
_____

APPEARANCES:                                 OF COUNSEL:

O'HARA, O'CONNELL & CIOTOLI                   STEPHEN CIOTOLI, ESQ.
  Attorneys for Plaintiffs
7207 East Genesee Street
Fayetteville, NY 13066

THE LAW FIRM OF FRANK W. MILLER              FRANK W. MILLER, ESQ.
  Attorneys for Defendants                   BRYAN N. GEORGIADY, ESQ.
6575 Kirkville Road
East Syracuse, NY 13057

GLENN T. SUDDABY, United States District Judge

## MEMORANDUM-DECISION and ORDER

         Currently before the Court, in this employment discrimination action filed by Kelly Seale

and David Seale ("Plaintiffs") against the above-captioned government entity[1] and five named

_____

         [1]         Although the Madison County Sheriff's Office is not named as a defendant in the
caption of Plaintiffs' Complaint, Plaintiffs refer to that entity as a defendant in the body of their
Complaint. Pursuant to Fed. R. Civ. P. 17, New York law governs the capacity of an
administrative arm of a municipality to sue or be sued. Under New York law, an administrative
arm of a municipality, such as the Madison County Sheriff's Office, does not have a legal

individuals ("Defendants"), is Defendants' motion for judgment on the pleadings pursuant to

Fed. R. Civ. P. 12(c) and/or to dismiss Plaintiffs' Complaint for lack of subject matter

jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  (Dkt. No. 11.)  For the reasons set forth below,

Defendants' motion for judgment on the pleadings is granted in part and denied in part, and

Defendants' motion to dismiss the Complaint for lack of subject matter jurisdiction is granted in

part and denied in part.

## I.      RELEVANT BACKGROUND

### A.      Plaintiffs' Complaint

Plaintiffs' Complaint asserts the following twelve claims against all Defendants: (1) sex

discrimination pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §

2000e et seq. ("Title VII"), (2) hostile work environment under Title VII, (3) disparate treatment

under Title VII, (4) retaliation under Title VII, (5) violation of the right to equal protection of the

laws under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983, (6) hostile work

environment under the Fourteenth Amendment pursuant to § 1983, (7) disparate treatment under

the Fourteenth Amendment pursuant to § 1983, (8) retaliation under the Fourteenth Amendment

pursuant to § 1983, (9) gender discrimination, disparate treatment, hostile work environment and

retaliation by all Defendants, as well as aiding and abetting same by the individually named

Defendants, under the New York Human Rights Law, N.Y. EXEC. LAW § 296 ("NYHRL"), (10)

retaliation under the First Amendment pursuant to § 1983, (11) violation of the right to vote

under the Fourteenth and Nineteenth Amendments pursuant to § 1983, and (12) conspiracy to

deprive the right to equal protection of the laws under 42 U.S.C. § 1985.  All causes of action are

_____

identity separate and apart from the municipality, and therefore, cannot sue or be sued.  *See*
*Davis v. Lynbrook Police Dept.*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002).  Accordingly, to the
extent Plaintiffs intend to name the Madison County Sheriff's Office as a defendant, the Court
sua sponte dismisses all claims against it.

asserted on behalf of both Plaintiffs, except for the Title VII disparate treatment claim, which is asserted solely on behalf of Plaintiff, Kelly Seale.

Generally, in support of their claims, Plaintiffs set forth the following factual allegations in their Complaint, which are accepted by the Court as true for purposes of deciding the current motion. Plaintiff, Kelly Seale ("Ms. Seale"), was employed by the Madison County Sheriff's Office ("Sheriff's Office") as a Community Services Aide from January 2008 through May 2010. Plaintiff, David Seale ("Mr. Seale"), is Kelly's husband. Mr. Seale has been employed at the Sheriff's Office as a Deputy Sheriff, Criminal Investigator and Polygraphist since 1992. In 2005, Mr. Seale injured his shoulder in the line of duty, resulting in multiple surgeries between 2005 and 2009, as well as intense physical therapy and rehabilitation. During all of his periods of surgeries, rehabilitation and physical therapy, Mr. Seale was covered by the Defendant, Madison County's ("the County") worker's compensation plan.

From January 2008 until sometime in January 2010, Ms. Seale's workspace was located in a small office area connected to a hallway that was just outside the office of Defendant, Matthew Episcopo ("Episcopo"). Episcopo was employed by the Sheriff's Office as a Captain, and was Mr. Seale's supervisor.

According to the Complaint, Ms. Seale "was subjected to repeated instances of sexual harassment, intimidation, humiliation, and discrimination by [] Episcopo," from January 2008 through January 2010. (*See* Dkt. No. 1, at ¶ 27 [Plaintiffs' Complaint].) In late 2009, Ms. Seale informed Defendants "about Episcopo's numerous instances of inappropriate behavior towards her, including but not limited to" the following eight events: (1) In May 2008, Episcopo placed a radio in Ms. Seale's work space with the volume set at a high level so that she could not hear him talk in his office. After Ms. Seale complained to Defendant, then Sheriff Ronald Cary

("Cary"), Episcopo removed the radio, stating to Ms. Seale that "your radio privileges have been revoked." (2) In September 2008, after Mr. Seale was taken out of work again by his doctor, Episcopo intentionally failed to turn in Ms. Seale's pay sheet record on time. As a result, Ms. Seale did not receive a paycheck on time. (3) On October 20, 2008, Episcopo was in his office with his door shut speaking to a deputy, who had apparently returned to work after having been out on worker's compensation, while still using crutches. In a loud tone of voice, so that Ms. Seale could hear, Episcopo stated, "This department is made up of a bunch of fucking cry babies that can't do their jobs . . . [this deputy] came back early on crutches and others are still milking comp and crying that their arms hurt. If I had my way, a lot of people wouldn't have their fucking jobs and we all know who I'm talking about." Episcopo knew that Mr. Seale was the only deputy out on worker's compensation for an arm injury. (4) On December 10, 2008, Ms. Seale discovered a pornographic snowman cartoon on her desk, and later learned that Episcopo had sent the identical cartoon to numerous deputy sheriffs over the previous few years. (5) On July 13, 2009, the day after Ms. Seale returned from a week's vacation, Episcopo entered his office with a deputy after first seeing Ms. Seale, and began singing in a loud voice, "The bitch is back, the bitch is back, spread her legs and eat her for a snack." Episcopo and the deputy then began talking loudly about an episode of South Park titled "Red Rocket," in which a character in the cartoon masturbates a dog in an attempt to "milk it." (6) On November 2, 2009, Episcopo went out of his way to talk to other employees and inform them that they should help themselves to snacks in the break room, but did not extend the same invitation to Ms. Seale. (7) On November 4, 2009, Episcopo was in his office speaking loudly to a lieutenant about Jim Zophy, who was the losing candidate for Madison County Sheriff, and whom Episcopo knew Plaintiffs supported. Episcopo stated that he was so happy "that fucking cock sucker Zophy didn't get

elected." Episcopo further stated, "I know that I am saying this loud enough so that anyone sitting outside of my office can hear me and know that changes are coming and they won't like it." Finally, Episcopo stated that he was going to get rid of all of the deputies and Sheriff's Office personnel who supported Zophy during the election. (8) The next day, November 5, 2009, as Episcopo was entering his office, he looked over at Ms. Seale and stated in a loud voice, "It's a glorious day – it's such a nice day, you can't wipe the smile off my face . . . I love it." Shortly thereafter, Kathy Chaires, secretary to the Sheriff, told Ms. Seale that she heard Episcopo's comments from the previous day, and reported them to Defendant Doug Bailey ("Bailey"), then Undersheriff for the Sheriff's Office.

Later in the day on November 5, 2009, Ms. Seale spoke to Bailey and recounted Episcopo's statements from that morning. Bailey expressed his disbelief because he just told Episcopo that morning to stop harassing Ms. Seale. Ms. Seale then recounted all of the details of the previously alleged eight instances of Episcopo's conduct, at which time Bailey was "visibly shocked and embarrassed." Bailey requested that Ms. Seale immediately file a harassment complaint with the County's Personnel Department. Shortly thereafter, Ms. Seale filed a complaint.

The County conducted an investigation of Ms. Seale's complaint. On January 6, 2010, Defendant, Ryan Aylward, ("Aylward"), Coordinator of Labor Relations for the County, informed Ms. Seale that she had no right to know any of the details of the investigation, but that her complaint of sexual harassment, discrimination, hostile work environment and retaliation was deemed to be unsupported and unfounded. Defendants then informed Ms. Seale that her office was being moved to a location outside of the Sheriff's Office because "Episcopo is a captain . . . we can't move him." (Dkt. No. 1, at ¶ 37.) On January 11, 2010, Defendant Allen

Riley ("Riley"), the newly elected Sheriff, showed Ms. Seale her new office space in the windowless basement of the Department of Motor Vehicles ("DMV") building across the street from the Sheriff's Office. Riley told Ms. Seale that even he, as Sheriff, was denied access by the County to any details of the investigation of her complaint and that "he was truly sorry for the difficulty this was causing her but that he valued her as an employee and would do his best to make the situation work." (*Id.* at ¶ 42.)

When Ms. Seale was hired, "part of the incentives and compensation for [her] employment was that she was allowed to make her own schedule and come in on days and at times that were convenient to her, whether it be days, nights, weekdays, or holidays, as long as she did not exceed 37 hours every two weeks and completed her assigned work." (*Id.*, at ¶ 23.) Also, Ms. Seale was given a County-owned S.U.V. to use as her job required, including trips to various schools, governmental offices and civic organizations within the community.

After Ms. Seale's office was moved, she was no longer able to work during any period other than between 8:30 a.m. and 5:00 p.m., when the DMV building was open, because she was not allowed to have a key to the building.

Ms. Seale filed a Notice of Claim against the Defendants on or about March 5, 2010. Also on or about March 5, 2010, Ms. Seale filed a complaint with the Equal Employment Opportunity Commission ("EEOC") regarding gender-based discrimination, sexual harassment, hostile work environment, and retaliation, as well as retaliation suffered by Mr. Seale in his position as a Deputy Sheriff under Defendant Episcopo. After Ms. Seale filed her EEOC complaint, the Defendants replaced her County-owned S.U.V. that she was using for work-related travel with a 15-year-old van, which was prone to mechanical breakdowns. Due to the treatment she received at the hands of Defendants, Ms. Seale resigned from her position and has since had to find other employment.

Prior to Ms. Seale filing her complaint with the County, during the time periods that Mr. Seale was out on worker's compensation, the County treated him as a full-time, fully employed Deputy Sheriff with the same benefits and salary as he had before he went out on compensation. One of those benefits is the ability to "sell back" his unused vacation time, which would appear as additional compensation in his paycheck. After Ms. Seale filed her complaint with the County, Bailey informed Mr. Seale that he was being denied his vacation "buy back" benefit, and that Mr. Seale would have to return to work full-time before December 28, 2009, in order to be eligible for the vacation "buy-back." In January 2010, approximately one month after Mr. Seale returned to full duty, the County denied or attempted to deny payment of any further physical therapy sessions or rehabilitation for Mr. Seale's shoulder injury. Also, Mr. Seale was denied the use of his sick and/or personal time or any other compensation time to attend physical therapy sessions during his normal work day, which is a restriction that was not placed on any other deputy.

Shortly after Ms. Seale filed her complaint with the EEOC, Mr. Seale was once again taken out of work due to his shoulder injury. Thereafter, in April 2010, Riley notified Mr. Seale in writing that he would be (1) required to provide ongoing and continuing verification by medical documentation of his "alleged on-duty injury;" (2) required to provide proof of scheduled appointments related to his "alleged" injury; and (3) ordered to home confinement for the duration of his leave while on worker's compensation, during which time he would be required to provide notification to a supervisor every time he left his residence, along with the reasons for doing so. *See* Dkt. No. 1, at ¶ 66. Mr. Seale's counsel immediately notified Riley that the aforementioned restrictions appeared to be in retaliation for Ms. Seale's EEOC complaint.

One week later, Mr. Seale requested to switch his scheduled shift with another deputy, who was simultaneously filing the same request. Shortly thereafter, Riley denied the request for a shift change without explanation, despite that Mr. Seale had never seen such a request denied in all of his years working at the Sheriff's Office.

Mr. Seale subsequently learned that the previous restrictions, which were placed on him by Riley, originated with Defendant Aylward in consultation with, and at the instigation or request of, Defendant Episcopo. On May 6, 2010, Riley rescinded his previous restrictions regarding Mr. Seale's home confinement. On May 10, 2010, Mr. Seale returned to work. The next day, Riley rescinded his denial of Mr. Seale's requested shift change.

After Mr. Seale returned to work, his assigned patrol car was vandalized while it was parked in a lot that only County employees had access to. Also, on a number of occasions, Mr. Seale discovered that the shotgun shells from the patrol unit's service shotgun as well as additional shells and ammunition for his assigned patrol car's shotgun were missing. Further, Mr. Seale came on duty to find that his assigned patrol vehicle, which was parked in a lot that was accessible only by County employees, had two flat tires. On another occasion, Mr. Seale came on duty to find that the dashboard camera in his assigned patrol car was unplugged.

Familiarity with the remaining factual allegations supporting Plaintiffs' claims is assumed in this Decision and Order, which is intended primarily for review by the parties. (*See generally* Dkt. No. 1.)

### B. Defendants' Motion

Generally, in support of their motion for judgment on the pleadings and/or to dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction, Defendants assert the following nine arguments: (1) Plaintiff Kelly Seale's Title VII hostile work environment claim must be

dismissed because (a) she did not allege she was harassed because of her gender, (b) she did not allege harassment that was severe or pervasive, and (c) she did not allege a plausible basis to impute Episcopo's conduct to the County; (2) Plaintiff Kelly Seale's Title VII gender discrimination and disparate treatment claims must be dismissed because (a) she did not allege sufficient facts to show an adverse employment action and (b) she did not allege facts to plausibly show an inference of discrimination; (3) Plaintiffs' Title VII retaliation claims must be dismissed because (a) Plaintiff Kelly Seale did not allege sufficient facts to show an adverse employment action and (b) the Court lacks jurisdiction over Plaintiff David Seale's Title VII retaliation claim; (4) Plaintiff Kelly Seale's equal protection claim must be dismissed because she failed to allege facts plausibly showing that the County acted with discriminatory intent; (5) Plaintiffs' Fourteenth Amendment claims for hostile work environment, disparate treatment and retaliation must be dismissed because they are either redundant or legally nonexistent; (6) Plaintiffs' NYHRL claims must be dismissed for the same reasons their counterpart claims under Title VII must be dismissed and alternatively, because Plaintiff David Seale did not submit a Notice of Claim; (7) Plaintiffs' First Amendment retaliation claims must be dismissed because (a) Plaintiff Kelly Seale did not allege sufficient facts to show an adverse employment action and (b) Plaintiff David Seale did not allege sufficient facts to show a causal connection between the alleged retaliation and any actions by the County; (8) Plaintiffs' voting rights claim must be dismissed because it is duplicative of their First Amendment retaliation claim; and (9) Plaintiffs' conspiracy claim must be dismissed because (a) it is barred under the intra-corporate conspiracy doctrine, (b) Plaintiff Kelly Seale did not allege conspiratorial conduct against her, (c) Plaintiff David Seale did not allege a specific act of conspiracy, (d) Plaintiff David Seale did not allege he was the victim of class-based animus, and (e) where Plaintiffs fail to allege any § 1983 claim, their conspiracy claim must also fail.  (*See generally* Dkt. No. 11-1.)

9

Generally, in response to Defendants' motion, Plaintiffs assert the following five arguments: (1) Plaintiffs have stated valid Title VII claims because (a) they have alleged facts to show that Episcopo created a sexually abusive and hostile work environment, which unreasonably interfered with Plaintiff Kelly Seale's work performance, (b) Plaintiffs have alleged that Ms. Seale was subjected to a material change in her work schedule after she complained about sexual harassment, giving rise to an inference of discrimination, (c) Plaintiffs have alleged that Defendants took adverse actions against Ms. Seale that would have dissuaded a reasonable person from making or supporting a charge of discrimination sufficient to state a claim for retaliation, and (d) Plaintiffs have alleged facts to support a finding that (i) Mr. Seale's retaliation claim is reasonably related to the claims Ms. Seale filed with the EEOC, (ii) Defendants materially altered the terms and conditions of Mr. Seale's employment, and (iii) Mr. Seale is within the zone of interest protected by Title VII's anti-retaliation provisions; (2) Plaintiffs have alleged an equal protection claim against the County as well as the individual Defendants, which encompasses claims for hostile work environment, disparate treatment and retaliation, because they have adequately pled these claims under Title VII; (3) Plaintiffs have sufficiently alleged claims under the NYHRL because (a) the standards for those claims are the same as the standards under Title VII, (b) Plaintiffs have alleged that the individual Defendants have the authority to do more than carry out the personnel decisions made by others and that they have aided and abetted the harassing behavior, which caused the hostile work environment, or have aided and abetted the covering up of such behavior, and (c) a Notice of Claim is not required for suit against the individual Defendants; (4) Plaintiffs have sufficiently pled their First Amendment claims, to the extent those claims are identical to their Title VII and Fourteenth Amendment claims, and Plaintiffs have sufficiently alleged a causal connection between

Episcopo's threats and Defendants' actions; and (5) Plaintiffs have adequately pled their conspiracy claim to the extent they have adequately pled their § 1983 claims, and the intra-corporate conspiracy doctrine does not apply to this case because Defendant Aylward worked in the Personnel Department and the remaining individual Defendants worked in the Sheriff's Office. (*See generally* Dkt. No. 14.)

Generally, in reply to Plaintiffs' response, Defendants assert the following eight arguments: (1) Plaintiff Kelly Seale fails to allege facts plausibly suggesting that the County is liable on her hostile work environment claim; (2) Plaintiff Kelly Seale fails to allege facts plausibly suggesting that her vehicle swap and office relocation are materially adverse actions, and fails to allege that either Defendants Riley or Aylward harbored any gender-based animus against her, either of which are fatal to her disparate treatment claim; (3) Plaintiff Kelly Seale fails to allege facts plausibly showing that her vehicle swap and office relocation are materially adverse for purposes of her Title VII retaliation claim; (4) Plaintiff Kelly Seale's opposition to the motion for judgment on the pleadings regarding her equal protection claim relies on allegations that do not appear in her pleading; (5) Plaintiff David Seale's Title VII retaliation claim must be dismissed for lack of subject matter jurisdiction because he did not file a complaint with the EEOC, either jointly with Plaintiff Kelly Seale or individually; (6) Plaintiff David Seale failed to sufficiently allege that the action Defendant Riley took at the encouragement of Episcopo was materially adverse, for purposes of his First Amendment retaliation claim; (7) the intra-corporate conspiracy doctrine applies to bar Plaintiffs' conspiracy claim because all Defendants are County employees; and (8) any remaining pendent state law causes of action must be dismissed for lack of subject matter jurisdiction, should the court dismiss all of Plaintiffs' federal causes of action. (*See generally* Dkt. No. 15.)

## II.     RELEVANT LEGAL STANDARDS

### A.     Legal Standard Governing Motions for Judgment on the Pleadings

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (collecting cases).  In evaluating such motions, district courts must accept all allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Patel*, 259 F.3d at 126 (citing *Irish Lesbian and Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir. 1998)).  "To survive a Rule 12(c) motion, the complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012).

For the sake of brevity, the Court will not recite, in this Decision and Order, the well-known legal standard governing dismissals for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), but will direct the reader to the Court's decision in *Wade v. Tiffin Motorhomes, Inc.*, No. 05-CV-1458, 2009 WL 3629674, at *3-5 (N.D.N.Y. Oct. 27, 2009) (Suddaby, J.).  In addition, the Court will merely add a few words regarding what documents are considered when a dismissal for failure to state a claim is contemplated.

Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial

notice for the factual background of the case.[2]

**B.    Legal Standard Governing Motion to Dismiss for Lack of Subject-Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1)**

"It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978).  Generally, a claim may be properly dismissed for lack of subject-matter jurisdiction where a district court lacks constitutional or statutory power to adjudicate it.  *See Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000).  A district court may look to evidence outside of the pleadings when resolving a motion to dismiss for lack of subject-matter jurisdiction.  *Makarova*, 201 F.3d at 113.  The plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance of the

---

[2]        *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12(d) if the "matters outside the pleadings" consist of (1) documents attached to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . .  Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . .  However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") (internal quotation marks and citations omitted); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

evidence. *Makarova*, 201 F.3d at 113 (citing *Malik v. Meissner*, 82 F.3d 560, 562 [2d Cir. 1996]).  When a court evaluates a motion to dismiss for lack of subject-matter jurisdiction, all ambiguities must be resolved and inferences drawn in favor of the plaintiff.  *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (citing *Makarova*, 201 F.3d at 113).

### C.  Legal Standards Governing Plaintiff's Claims

#### 1.  Title VII

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of," inter alia, "such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).  Thus, by definition, "Title VII protects a limited class of persons from discrimination." *Kiley v. Am. Socy. for Prevention of Cruelty to Animals*, 296 F. App'x 107, 109 (2d Cir. 2008) (quoting 42 U.S.C. § 2000e-2(a)(1), (2)).  Liability on Title VII claims is limited to employers, not individuals.  *See Reynolds v. Barrett*, 685 F.3d 193, 202 (2d Cir. 2012).

Filing a charge with the EEOC is a jurisdictional prerequisite to a private civil action under Title VII.  *See Morgan v. NYS Attorney Gen.'s Office*, No. 11-CV-9389, 2013 WL 491525, at *6 (S.D.N.Y. Feb. 8, 2013 ) (citing *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 146 (2d Cir.2012) (citing 42 U.S.C. §§ 2000e–5(e)(1), (f)(1))).  Claims not raised before the EEOC may still be brought in federal court as long as they are "reasonably related" to the claims that were filed with the agency.  *See id.*  (quoting *Butts v. N.Y.C. Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir.1993), superseded by statute on other grounds as recognized in *Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684 (2d Cir.1998)).  A claim is "reasonably related" where the conduct complained of "would fall within the scope of the EEOC investigation which

can reasonably be expected to grow out of the charge of discrimination." *Butts*, 990 F.2d at 1402. When determining whether a claim is reasonably related to the claims filed with the EEOC, courts should focus "on the factual allegations made in the EEOC charge itself, describing the discriminatory conduct about which a plaintiff is grieving," and "whether the complaint filed with the EEOC gave that agency adequate notice to investigate discrimination on both bases." *Williams v. New York City Housing Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (internal alteration and citation omitted).

### a.    Hostile Work Environment

In enacting Title VII, Congress intended to protect against "the entire spectrum of disparate treatment of men and women in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment." *Redd v. New York Div. of Parole*, 678 F.3d 166, 174-175 (2d Cir. 2012) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367 (1993)).

In order to state a claim for a hostile work environment under Title VII, the underlying harassment alleged "must be sufficiently severe or pervasive," both subjectively and objectively, "to alter the conditions of [the plaintiff's] employment and create an abusive working environment." *Redd*, 678 F.3d at 175 (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S. Ct. 2399 (1986); *Harris*, 510 U.S. at 21-22, 114 S. Ct. 367). Further, the plaintiff must allege facts plausibly suggesting that the hostile or abusive treatment was because of his or her membership in a class of persons protected by Title VII. *See Redd*, 678 F.3d at 175. The types of workplace conduct that may be actionable on a claim for hostile work environment based on sex "include unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature." *Meritor*, 477 U.S. at 65, 106 S. Ct. 2399 (citing 29 C.F.R. § 1604.11(a) (1985)).

A determination of whether an environment is objectively hostile or abusive requires an evaluation of all the circumstances, such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Redd*, 678 F.3d at 175 (citing *Harris*, 510 U.S. at 23, 114 S. Ct. 367). Whether an environment is subjectively hostile or abusive may be determined by the effect on the plaintiff's psychological well-being, although no single factor is required. *See id.* To survive a motion for judgment on the pleadings, however, "a plaintiff need only plead facts sufficient to support the conclusion that she was faced with 'harassment ... of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.'" *Reynoso v. All Foods, Inc.*, No. 12-CV-1714, 2012 WL 6093784, at *6 (E.D.N.Y. Dec. 7, 2012) (quoting *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir.2007)). At such an early stage of litigation, "courts 'have repeatedly cautioned against setting the bar too high.'" *Id.*

Moreover, in order to establish her claim for hostile work environment, a plaintiff need not show that her "working environment was both severe and pervasive; only that it was sufficiently severe or sufficiently pervasive, or a sufficient combination of these elements, to have altered her working conditions." *Redd*, 678 F.3d at 175 (quoting *Pucino v. Verizon Commc'ns, Inc.*, 618 F.3d 112, 119 (2d Cir. 2010)). Typically, isolated incidents will not suffice to establish a hostile work environment, "although we have often noted that even a single episode of harassment can establish a hostile work environment if the incident is sufficiently severe." *Redd*, 678 F.3d at 175-176 (citing, inter alia, *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir.2004) ("[A] single act can create a hostile work environment if it in fact work[s] a transformation of the plaintiff's workplace." (internal quotation marks omitted)).

It is important to keep in mind, however, that "while the central statutory purpose of Title VII was eradicating discrimination in employment, Title VII does not set forth a general civility code for the American workplace." *Redd*, 678 F.3d at 176 (quoting *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 771, 96 S. Ct. 1251 (1976); *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405 (2006). Title VII is "meant to protect individuals from abuse and trauma that is severe[, but is] not intended to promote or enforce civility, gentility or even decency." *Taylor v. New York City Dept. of Educ.*, No. 11-CV-3582, 2012 WL 3150388, at *8 (E.D.N.Y. Aug. 2, 2012) (quoting *Curtis v. DiMaio*, 46 F. Supp. 2d 206, 213-14 (E.D.N.Y. 1999)).

In addition to alleging facts plausibly suggesting she was subjected to a hostile work environment, a plaintiff must also allege facts to plausibly suggest that the conduct which created the hostile environment may be imputed to her employer. *See Shiner v. State Univ. of New York*, No. 11-CV-1024, 2012 WL 5398658, at *4 (W.D.N.Y. Nov. 2, 2012) (citing *Leopold v. Baccarat, Inc.*, 239 F.3d 243, 245 (2d. Cir.2001)).

The actions of a plaintiff's coworkers will be imputed to the employer if the employer "either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." *Wiercinski v. Mangia 57, Inc.*, No. 09-CV-4413, 2012 WL 2319142, at *10 (E.D.N.Y. June 19, 2012) (quoting *Murray v. N.Y. Univ. Coll. of Dentistry*, 57 F.3d 243, 249 (2d Cir. 1995)).

However, the actions of a plaintiff's supervisor are "automatically imputed to the employer unless the employer is able to successfully raise an affirmative defense that examines the reasonableness of the conduct of both the employer and the employee." *Shiner*, 2012 WL 5398658, at *4. This defense requires the employer to show that it "exercised reasonable care to

prevent and correct any harassing behavior" and that the plaintiff "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer to avoid harm otherwise." *Faragher v. City of Boca Raton*, 524 U.S. 775, 807, 118 S. Ct. 2275 (1998); *Burlington Indus. v. Ellerth*, 524 U.S. 742, 765, 118 S. Ct. 2257 (1998).

Where an employer "maintains a policy against sexual harassment and provides a process through which employees can complain about violations of that policy," it will have met the first prong of its affirmative defense. *Joyner v. City of New York*, No. 11-CV-4958, 2012 WL 4833368, at *3 (S.D.N.Y. Oct. 11, 2012). Further, where a plaintiff fails to take advantage of that system until more than a year after the alleged harassment began, and where the offensive conduct ceased once plaintiff reported it, an employer will establish the second prong of its defense. *See Joyner*, 2012 WL 4833368, at *3 (citing *Leopold*, 239 F.3d at 246).

### b. Gender Discrimination and Disparate Treatment

To state a claim of intentional discrimination under Title VII a plaintiff must allege that "(1) [s]he is a member of a protected class; (2) [s]he was qualified for the position [s]he held; (3) [s]he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to an inference of discrimination." *Bir v. Pfizer, Inc.*, No. 12-CV-0648, 2013 WL 362973, at*1 (2d Cir. Jan. 31, 2013) (quoting *Reynolds v. Barrett*, 685 F.3d 193, 202 (2d Cir.2012) (internal quotation marks and alteration omitted)). "A showing of disparate treatment—that is, a showing that the employer treated plaintiff less favorably than a similarly situated employee outside his protected group—is a recognized method of raising an inference of discrimination for purposes of making out a prima facie case." *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003).

Once a plaintiff establishes a prima facie case, the burden shifts to the employer to provide a legitimate non-discriminatory reason for the employment action at issue. *See Bir*, 2013 WL 362973, at*1 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)). If the employer makes this showing, the burden then shifts back to the plaintiff to show that the employer's proffered explanation is a pretext for discrimination. *Id.* (citing *Ruiz v. Cnty. of Rockland,* 609 F.3d 486, 492 (2d Cir.2010)). However, "[t]he prima facie case under *McDonnell Douglas* ... is an evidentiary standard, not a pleading requirement." *Leibowitz v. Cornell Univ.*, 445 F.3d 586, 591 (2d Cir. 2006) (quoting *Swierkiewicz v. Sorema*, N.A., 534 U.S. 506, 510, 122 S. Ct. 992 (2002)). *See also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). Therefore, a plaintiff's discrimination claim will survive a motion for judgment on the pleadings where the complaint puts the defendant on notice of plaintiff's claim with sufficient factual allegations that, if true, would establish a prima face case of discrimination. *See Chacko v. Worldwide Flight Servs., Inc*., No. 08-CV-2363, 2010 WL 424025, at *3 (E.D.N.Y. Feb. 3, 2010) (citing *Swierkiewicz*, 534 U.S. at 514, 122 S. Ct. 992; *McDonnell Douglas Corp.*, 411 U.S. 792, 93 S. Ct. 1817).

"'A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment. To be materially adverse a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities.' A change that is 'materially adverse' could consist of, inter alia, 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation.'" *Morgan*, 2013 WL 491525, at *5 (quoting *Galabya v. New York City Bd. of Educ*., 202 F.3d 636, 640 (2d Cir. 2000)).

### c.      Retaliation

To state a claim of retaliation under Title VII, a plaintiff must allege "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action."  *Bir*, 2013 WL 362973, at*4 (citing *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (internal quotation marks omitted)).

While the same three-step burden-shifting analysis that is applicable to discrimination claims also applies to retaliation claims, *see El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 932-33 (2d Cir.2010) (per curiam), in order to survive a motion for judgment on the pleadings, a plaintiff is only required to set forth enough facts in her complaint to "give fair notice of her claims, and those claims must be facially plausible[,]" *see Morris v. David Lerner Assocs.*, 680 F. Supp. 2d 430, 440 (E.D.N.Y. 2010).

"The required showing of an adverse employment action differs in the context of a retaliation claim from the required showing in a discrimination claim.  In the context of retaliation claims, adverse employment actions are defined broadly as employer actions that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Lampris v. Banco do Brasil, S.A.*, No. 10-CV-9576, 2012 WL 6021091, at *9 (S.D.N.Y. Dec. 4, 2012) (quoting *White*, 548 U.S. at 57, 126 S. Ct. 2405).

### 2.      NYHRL

"Because New York courts require the same standard of proof for claims brought under the NYHRL as for those brought under Title VII," those claims may be analyzed in tandem. *Leopold,* 174 F.3d at 264, n.1 (citing *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1304 n.4 (2d Cir.1995), abrogated on other grounds by *Burlington Indus.,* 524 U.S. 742, 118 S. Ct. 2257).  *See*

*also Salmon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226, n.2 (2d Cir. 2008). Accordingly, a court's ruling regarding a plaintiff's Title VII claims applies with equal force to those claims under the NYHRL. *See Leopold*, 174 F.3d at 264, n.1.

Under the NYHRL, however, a plaintiff may allege claims against an individual defendant as an aider or abettor of NYHRL violations. In order for a plaintiff to recover against an aider or abettor of NYHRL violations, she must establish "(1) that she engaged in conduct protected by the NYHRL; (2) there is a causal connection between the protected conduct and the alleged [violations] of the NYHRL; and (3) that [the defendant] 'actually participated' in the discrimination." *Beattie v. Guilderland Cent. Sch. Dist.*, 124 F. Supp. 2d 802, 805 (N.D.N.Y. 2000) (citations omitted). *See also* N.Y. Exec. Law § 296.1(a) (McKinney 2012). Further, a plaintiff must show that the defendant "aided or abetted a primary violation of the NYHRL committed by another employee or the business itself." *Jordan v. Cayuga Cnty.*, No. 01-CV-1037, 2004 WL 437459, at *4 (N.D.N.Y. Feb. 9, 2004) (quoting *Bennett v. Progressive Corp.*, 225 F. Supp.2d 190, 213 (N.D.N.Y.2002) (internal quotation and emphasis omitted)). *See DeJohn v. Wal-Mart Stores East, LP*, No. 09-CV-1315, 2012 WL 3679204, at *16 (N.D.N.Y. Aug. 17, 2012). However, an individual cannot be held liable for aiding and abetting their own violations of the NYHRL. *See Reid v. Ingerman Smith LLP*, 876 F. Supp. 2d 176, 186 (E.D.N.Y. 2012). Finally, an employee is not individually subject to suit as an aider or abettor under the NYHRL "if he is not shown to have any ownership interest or any power to do more than carry out personnel decisions made by others." *Miotto v. Yonkers Public Schools*, 534 F. Supp. 2d 422, 427 (S.D.N.Y. 2008) (quoting *Patrowich v. Chemical Bank*, 63 N.Y.2d 541, 483 N.Y.S.2d 659, 660, 473 N.E.2d 11 (1984)). *See also Tomka*, 66 F.3d at 1317.

### 3.     42 U.S.C. § 1983

In order to state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege "(1) that some person has deprived him of a federal right, and (2) that the person who has deprived him of that right acted under color of state ... law." *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S. Ct. 1920 (1980) (internal quotations omitted)).  "Section 1983 is not itself a source of substantive rights[,] but merely provides a method for vindicating federal rights elsewhere conferred[.]" *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3, 99 S. Ct. 2689 (1979)).

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Kregler v. City of New York*, 821 F. Supp. 2d 651, 655-656 (S.D.N.Y. 2011) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994) (internal quotation marks omitted)).  A plaintiff may allege the personal involvement of a defendant who occupies a supervisory position by alleging that the defendant: "(1) directly participated in the infraction; (2) failed to remedy the wrong after learning of the violation; (3) created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue; (4) was grossly negligent in managing subordinates who caused the unlawful condition or event; or (5) exhibited 'gross negligence' or 'deliberate indifference' to the constitutional rights of [the plaintiff] by having actual or constructive notice of the unconstitutional practices and failing to act." *Kregler*, 821 F. Supp. 2d at 655-56 (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995); *Wright*, 21 F.3d at 501).

A municipality may only be liable on a § 1983 claim "if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the

municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91, 98 S. Ct. 2018 (1978)). In the absence of such a custom or policy, a municipality may not be held liable on a § 1983 claim for the actions of its employees under a theory of vicarious liability. *See Jones*, 691 F.3d at 80 (citing *Monell*, 436 U.S. at 691, 98 S. Ct. 2018). Thus, isolated acts of municipal employees are typically not sufficient to establish municipal liability. However, acts done "pursuant to municipal policy, or [that] were sufficiently widespread and persistent to support a finding that they constituted a custom, policy, or usage of which supervisory authorities must have been aware" would justify liability of the municipality. *Jones*, 691 F.3d at 81. Further, "a municipal custom, policy, or usage would be inferred from evidence of deliberate indifference of supervisory officials to such abuses. " *Id.*

### a. First Amendment Retaliation

"[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Dillon v. Suffolk Cnty. Dep't of Health Servs.*, No. 07-CV-4722, 2013 WL 208950, at *6 (E.D.N.Y. Jan. 16, 2013) (quoting *Garcetti v. Cebal los*, 547 U.S. 410, 417, 126 S. Ct. 1951 (2006)). In order to state a claim for First Amendment retaliation, a public employee must show that (1) she engaged in "constitutionally protected speech" because she spoke as a citizen on a matter of public concern; (2) she suffered an adverse employment action; and (3) the speech at issue was a substantial or motivating factor in the decision. *Dillon*, 2013 WL 208950, at *6 (quoting *Johnson v. Ganim*, 342 F.3d 105, 112 (2d Cir.2003)). The threshold inquiry is whether the employee spoke as a citizen on a matter of public concern. "If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." *Garcetti*, 547 U.S. at 418. "The

Supreme Court has defined 'a matter of public concern' as one that 'relat[es] to any matter of political, social, or other concern to the community.'" *Sousa v. Roque*, 578 F.3d 164, 170 (2d Cir.2009) (quoting *Connick v. Myers*, 461 U.S. 138, 146, 103 S. Ct. 1684 (1983)). The support of a candidate for public office can reasonably be considered a matter of public concern. *See Kelly v. Huntington Union Free Sch. Dist.*, 675 F. Supp. 2d 283, 294 (E.D.N.Y. 2009) (citing *Connick*, 461 U.S. at 149, 103 S.Ct. 1684 (holding that plaintiff's speech about whether government employees were pressured to participate in political campaign touched on a matter of public concern)).

In the context of a First Amendment retaliation claim, an adverse action is any "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights[.]" *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 225 (2d Cir. 2006). Such actions can include "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand," or may include "lesser actions" such as "negative evaluation letters, express accusations of lying, assignment of lunchroom duty, reduction of class preparation periods, failure to process teacher's insurance forms, transfer from library to classroom teaching as an alleged demotion, and assignment to classroom on fifth floor which aggravated teacher's physical disabilities." *Zelnik*, 464 F.3d at 226 (quoting *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir.1999)).

### b.     Abridgement of Right to Vote

The Nineteenth Amendment provides that the right of citizens to vote shall not be denied or abridged on the basis of sex. U.S. CONST. AM. XIX. Therefore, in order to state a § 1983 claim for the violation of one's rights under the Nineteenth Amendment, a plaintiff must allege that his or her right to vote has been abridged on the basis of sex. *Cf. New v. Pelosi*, 374 F.

App'x 158, 159 (2d Cir. 2010) (affirming district court's conclusion that plaintiff failed to state a cognizable claim under the Nineteenth Amendment where he offered no claim that his own right to vote was abridged on the basis of sex).

### c.    Equal Protection

A plaintiff may allege a claim for the violation of her right to equal protection under the Fourteenth Amendment based on sex discrimination, since the Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). "Once action under color of state law is established, the analysis for such claims is similar to that used for employment discrimination claims brought under Title VII, the difference being that a § 1983 claim, unlike a Title VII claim, can be brought against individuals." *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006) (quoting *Feingold* , 366 F.3d at159 & n.20). Thus, claims for hostile work environment and disparate treatment may be brought under § 1983 as equal protection claims. *See Demoret*, 451 F.3d at 149. However, a claim of retaliation for complaining of gender discrimination is not properly brought under the Equal Protection Clause. *See Bernheim v. Litt*, 79 F.3d 318, 323 (2d Cir.1988).

### 4.    Conspiracy to Violate Plaintiff's Rights

To state a conspiracy claim under 42 U.S.C. § 1985(3), a plaintiff muse allege: (1) some class-based discriminatory animus underlying the defendant's actions; and (2) that the conspiracy was aimed at interfering with plaintiff's protected rights. *See Brito v. Arthur*, 403 F. App'x 620, 621 (2d Cir. 2010) (citing *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268, 113 S. Ct. 753 (1993)). Vague and conclusory allegations that defendants entered into an unlawful agreement will not suffice to state a claim under § 1985(3). *See Kiryas Joel Alliance v.*

*Vill. of Kiryas Joel*, No. 12-217-CV, 2012 WL 3892744, at *5 (2d Cir. Sept. 10, 2012) (citing

*Gyadu v. Hartford Ins. Co.*, 197 F.3d 590, 591 (2d Cir.1999)); *Emmerling v. Town of Richmond*,

434 F. App'x 10, 12 (2d Cir. 2011). Instead, "a plaintiff must provide some factual basis

supporting a meeting of the minds, such that defendants entered into an agreement, express or

tacit, to achieve the unlawful end." *Kiryas Joel Alliance*, 2012 WL 3892744, at *5 (quoting

*Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003)). In addition, a plaintiff may only state a

claim under § 1985(3) where she alleges a conspiracy "motivated by some racial, or perhaps

otherwise class-based, invidiously discriminatory animus." *Harrison v. Lutheran Med. Cent.*,

468 F. App'x 33, 37 (2d Cir. 2012) (quoting *United Bd. of Carpenters & Joiners v. Scott*, 463

U.S. 825, 828-29, 103 S. Ct. 3352 (1983)).

According to the intra-corporate conspiracy doctrine, which applies to § 1985 conspiracy

claims, *see Herrmann v. Moore*, 576 F.2d 453, 459 (2d Cir.1978), "officers, agents, and

employees of a single corporate or municipal entity, each acting within the scope of his or her

employment, are legally incapable of conspiring with each other." *Fitzgerald v. City of Troy*,

N.Y., No. 10-CV-451, 2012 WL 5986547, at *23 (N.D.N.Y. Nov. 28, 2012) (quoting *Jefferson

v. Rose*, — F. Supp. 2d —, —, 2012 WL 1398743, *4 (E.D.N.Y. Apr. 23, 2012) (quotations and

citations omitted). Where all alleged co-conspirators are employed by the same municipal

entity, the intra-corporate conspiracy doctrine precludes a conspiracy claim. *See Fitzgerald*,

2012 WL 5986547, at *24 (citing *Baines v. Masiello*, 288 F. Supp. 2d 376, 394-95 (W.D.N.Y.

2003) (holding that a conspiracy claim brought against "the Common Council, the Mayor, and

the City Clerk" was barred by the intra-corporate conspiracy doctrine); *Broich v. Inc. Vill. of

Southampton*, 650 F. Supp. 2d 234, 247 (E.D.N.Y. 2009) (holding that conspiracy claims against

the Village Board trustees, mayor, and former and current chief of police are barred by the intra-

corporate conspiracy doctrine).

**D.  Legal Standards Governing Defendants' Defenses**

**1.  Defense of Failure to File a Notice of Claim**

New York law requires the filing of a Notice of Claim as a condition precedent to the commencement of any tort action against a municipality or any of its officers, agents or employees.  *See* N.Y. GEN. MUN. LAW § 50-e (McKinney 2012).  "This notice-of-claim requirement is 'construed strictly by New York state courts,' and '[f]ailure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action.'"  *Berry v. Vill. of Millbrook*, 815 F. Supp. 2d 711, 724 (S.D.N.Y. 2011) (quoting *Hardy v. N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 793-94 (2d Cir.1999)).

Section 52 of the New York County Law requires the service of a notice of claim "in accordance with section fifty-e of the general municipal law" for "[a]ny claim ... against a county for damage, injury or death, or for invasion of personal or property rights, of every name and nature," as well as "any other claim for damages ... alleged to have been caused or sustained in whole or in part because of any misfeasance, omission of duty, negligent or wrongful act on the part of the county, its officers, agents, servants or employees."  N.Y. COUNTY LAW § 52(1) (McKinney 2012).

Regarding claims filed against county employees in their individual capacities, "service of a notice of claim is not a condition precedent to the commencement of an action against a county's employees or agents unless the county is required to indemnify the individual defendants."  *Costabile v. Cnty. of Westchester*, 485 F. Supp. 2d 424, 432  (S.D.N.Y. 2007) (citing N.Y. GEN. MUN. LAW § 50-e(1)(b)).  Where the employees were acting within the scope of their employment in committing the alleged tortious acts, the county is obligated to indemnify them.  *See Olsen v. Cnty. of Nassau*, No. CV-05-3623, 2008 WL 4838705, at *4 (E.D.N.Y. Nov.

4, 2008).  Where, according to a plaintiff's complaint, the defendant county employees were

acting outside the scope of their employment, i.e., by the commission of intentional torts, the

filing of a notice of claim is unnecessary.  *See Olsen*, 2008 WL 4838705, at *4 (citing *Grasso v.

Schenectady Cnty. Pub. Library*,  817 N.Y.S.2d 186, 190, 30 A.D.3d 814 (N.Y. App. Div. 2006).

## III.     ANALYSIS

### A.     Whether Defendants' Motion for Judgment on the Pleadings Should Be Granted Regarding All Claims by Plaintiff Kelly Seale

#### 1.     Whether Plaintiff Kelly Seale Has Plausibly Alleged a Claim for Hostile Work Environment Under Title VII, NYSHRL and the Equal Protection Clause

After carefully considering the matter, the Court answers this question in the affirmative,

in part, and in the negative, in part.

Although Defendants argue that Ms. Seale fails to allege harassment because of her

gender, the Court finds that her allegations regarding the pornographic snowman cartoon and the

"bitch is back" song plausibly suggest a connection between the conduct and her gender.

Further, while the Court agrees that Ms. Seale has failed to allege that the harassment was

sufficiently pervasive,[3] her allegations plausibly suggest that the incident regarding the "bitch is

back" song created an objectively severe hostile work environment.  Defendants attempt to

---

[3]      In their memorandum of law opposing Defendants' motion regarding the hostile work environment claim, Plaintiffs cite facts that might support an argument that the alleged conduct was sufficiently pervasive.  However, those cited facts do not appear in the complaint.  Plaintiffs' allegations that "Episcopo was constantly telling sexually charged jokes" and "was constantly staring at Plaintiff[ Kelly Seale]'s breasts" may appear in the Kelly Seale deposition transcript submitted in support of Plaintiffs' opposition to the pending motion, but they do not appear anywhere in the complaint.  (*See* Dkt. No. 14, at 12 [Pls.' Mem. of Law] (citing Ex. A. to D'Imperio Aff. [Dep. of Kelly Seale])).  Kelly Seale's deposition transcript is not a document that is either (1) attached to the complaint, (2) imported by reference into the complaint, (3) integral to the complaint, or (4) a matter of which the Court can take judicial notice. Accordingly, it is not properly considered by the Court when deciding a motion for judgment on the pleadings.

dismiss the song as not severe because Ms. Seale fails to allege that it was sung in her presence or that her name was used in the lyrics. However, Ms. Seale alleges that Episcopo was in his office, which was immediately adjacent to her work area, and that he began singing in a loud voice in the presence of a deputy. These allegations, coupled with the allegation that Ms. Seale had just returned from a week's vacation one day prior, plausibly support a conclusion that the song, which lyrics are sufficiently sexually humiliating and degrading, was directed at Ms. Seale. Finally, Ms. Seale alleges that she was embarrassed and humiliated as a result of Episcopo's conduct.

Defendants also argue that Ms. Seale fails to allege facts plausibly imputing liability to the County on her hostile work environment claim under Title VII and the NYHRL. To be sure, Ms. Seale alleges that she first complained about Episcopo's conduct to Bailey on November 5, 2009, but does not allege that any further harassment occurred after she complained. Accordingly, if Episcopo were a co-worker, not a supervisor, Ms. Seale's claim against the County would fail. In order to impute liability to an employer for the acts of a co-worker, Ms. Seale would have had to allege that the County either knew of the harassment and did nothing about it or provided no reasonable avenue for complaint. Given that Ms. Seale alleges that she did complain, that the County conducted an investigation, and that the County took steps to prevent further harassment, (although she is critical both of the investigation and the steps the County took), if Episcopo were deemed to be Ms. Seale's coworker, her claim against the County would fail. However, the complaint includes allegations plausibly suggesting that Episcopo was Ms. Seale's supervisor. (*See* Dkt. No. 1, at ¶ 30.b. regarding Episcopo's failure to "turn in Kelly's pay sheet record.") Therefore, liability is automatically imputed to the County, unless it can establish the elements of an affirmative defense, the first of which is that it

exercised reasonable care to prevent and correct any harassing behavior.  Where an employer maintains a policy against sexual harassment and provides a process through which employees may complain about violations of the policy, this element will have been met.  The pleadings are silent, however, as to whether such a policy was in place.  Accordingly, Ms. Seale has successfully pled a hostile work environment claim against the County under Title VII and NYHRL.

Ms. Seale also asserts a § 1983 equal protection claim for hostile work environment against Defendant Episcopo, but fails to allege the requisite personal involvement against the remaining individual Defendants.  Ms. Seale alleges no facts plausibly suggesting that any of the individual Defendants knew of Episcopo's conduct before she complained, or that they failed to remedy it after she complained.  Moreover, Ms. Seale fails to plausibly allege a § 1983 equal protection claim for hostile work environment against the County because she fails to allege that the County had a policy or custom pursuant to which Episcopo acted and/or that Episcopo's supervisory officials had knowledge of his actions but were deliberately indifferent. Nor has Ms. Seale stated a claim against any of the individual Defendants pursuant to the NYHRL because Episcopo could not have aided and abetted his own conduct, and Plaintiff fails to allege that the remaining individual Defendants had knowledge of Episcopo's conduct in order to aid or abet that conduct.

Accordingly, Defendants' motion for judgment on the pleadings against Plaintiff Kelly Seale on her hostile work environment claims under Title VII, NYHRL and § 1983 is denied in part and granted in part.  Plaintiff Kelly Seale's hostile work environment claim against the County under Title VII and NYHRL and against Defendant Episcopo under § 1983 survive. Defendants' motion for judgment on the pleadings is granted on Plaintiff's NYHRL and Title

VII hostile work environment claims against the individual Defendants and on Plaintiff's § 1983 claim against the County and Defendants Riley, Bailey, Cary and Aylward.

> ### 2. Whether Plaintiff Kelly Seale Has Plausibly Alleged a Claim for Discrimination or Disparate Treatment Under Title VII, NYSHRL and the Equal Protection Clause

After carefully considering the matter, the Court answers this question in the negative generally for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 11-1, at 10-11.) The Court would only add the following brief analysis.

Defendants argue that Ms. Seale has failed to allege facts plausibly suggesting that she suffered an adverse employment action for purposes of her discrimination and disparate treatment causes of action. Defendants are correct. Ms. Seale alleges that her vehicle change and her change in office location, which necessarily limited her previously flexible schedule, were materially adverse. In support, Ms. Seale cites case law that is either legally or factually inapposite, referencing the "adverse action" standard for a retaliation claim, or dealing with a plaintiff whose employment was terminated. *See White*, 548 U.S. at 69, 126 S. Ct. 2405 (noting that a change in work schedule may be immaterial to many workers but matter enormously to a young mother with school-age children, in the context of a retaliation claim where the standard for adverse action is an action that would deter victims of discrimination from complaining to the EEOC, the courts, and their employers); *Hicks*, 593 F.3d at 169 (listing punitive scheduling as one of a laundry list of adverse actions on a retaliation claim); *Tarshis v. Riese Org.*, 211 F.3d 30, 36 (2d Cir. 2000) (ADEA discrimination claim where plaintiff was discharged).

The scope of what constitutes an adverse employment action is more limited on a discrimination claim than it is on a claim for retaliation. A change in an employee's schedule, without more, is not an adverse employment action in the context of a discrimination claim. *See*

*Pacheco v. New York Presbyterian Hosp*., 593 F. Supp. 2d 599, 619 (S.D.N.Y. 2009) (citing

*Ludwig v. Rochester Psychiatric Ctr*., 550 F. Supp. 2d 394, 399 (W.D.N.Y.2008) (finding no

adverse employment action where there were minor changes to plaintiff's work schedule and

weekends off); *Antonmarchi v. Consol. Edison Co.*, No. 03-CV-7735, 2008 WL 4444609, at *14

(S.D.N.Y. Sept. 29, 2008) ("Unfavorable hours do not constitute an adverse employment action

for the purposes of Title VII."); *Constance v. Pepsi Bottling Co.*, No. 03-CV5009, 2007 WL

2460688, at *18 (E.D.N.Y. Aug. 24, 2007) ("[P]laintiff's complaints that he was required to

travel and had irregular shifts requiring him to work at night and on occasional weekends

amounts to 'mere inconveniences' rather than adverse actions." (quoting *Galabya,* 202 F.3d at

640)); *Ruhling v. Tribune Co.*, No. 04-CV-2430, 2007 WL 28283, at * 10 (E.D.N.Y. Jan. 3,

2007) ("[I]t should be noted that a schedule change standing alone does not constitute an adverse

employment action."); *Rivera v. Potter*, No. 03-CV-1991, 2005 WL 236490, at *6 (S.D.N.Y.

Jan. 31, 2005) (noting that an unwanted schedule change is not an adverse employment action);

accord *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 769 (5th Cir.2001) (finding that a

reassignment from a day shift to a night shift is not a change in duties, compensation or benefits

constituting an adverse employment action); *Grube v. Lau Indus., Inc*., 257 F.3d 723, 728 (7th

Cir.2001) (holding that an employer's decision to move an employee from a first shift to a

second shift does not, without more, rise to the level of an adverse employment action in a case

of employment discrimination)).

Here, Ms. Seale alleges that the suffered an adverse action when her office was moved to

a building where her access was limited to the hours between 8:30 a.m. and 5:00 p.m. Given that

Ms. Seale was hired for part time employment, not to exceed 37.5 hours in a two week period,

this change in schedule did not alter her compensation. *Cf. Kassner v. 2nd Avenue Delicatessen*

*Inc.*, 496 F.3d 229, 239 (2d Cir. 2007) (allegation of schedule change that reduced plaintiff's potential for tip income is enough to survive motion to dismiss). Nor does Plaintiff allege that the schedule change constituted a setback to her career. *See Adams v. City of New York*, 837 F. Supp. 2d 108, 120 (E.D.N.Y. 2011) (quoting *Galabya*, 202 F.3d at 640). The inconvenience caused by a change in work location and hours, without an accompanying allegation that such changes amounted to a demotion, is not enough to meet the definition of an adverse action for purposes of a discrimination claim. *See Adams,* 837 F. Supp. 2d at 120 (citing *Johnson v. Eastchester Union Free Sch. Dist.*, 211 F. Supp. 2d 514, 518 (S.D.N.Y.2002).

Ms. Seale's failure to allege facts plausibly suggesting an adverse employment action is fatal to her discrimination and disparate treatment claims. Accordingly, Defendants' motion for judgment on the pleadings is granted as to Plaintiff Kelly Seale's discrimination and disparate treatment claims pursuant to Title VII, NYHRL and § 1983.

### 3. Whether Plaintiff Kelly Seale Has Plausibly Alleged a Claim for Retaliation Under Title VII, NYSHRL and the Equal Protection Clause

After carefully considering the matter, the Court answers this question in the affirmative, in part, and in the negative, in part.

Defendants argue that Ms. Seale fails to allege a Title VII retaliation claim for the same reason she fails to allege a claim for discrimination, which is that her schedule change and vehicle switch do not amount to an adverse employment action.

To be sure, Defendants incorrectly argue that the law regarding what constitutes an adverse employment action is the same under discrimination claims and retaliation claims. The Supreme Court has held that a plaintiff claiming retaliation under Title VII "must show that a reasonable employee would have found the challenged action materially adverse, 'which in this

context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *White*, 548 U.S. at 67-68, 126 S. Ct. 2405. "[T]he fact that actions are adverse for anti-retaliation claim purposes does not mean that they are so for disparate treatment purposes." *Jeter v. New York City Dept. of Educ*., No. 06-CV-3687, 2012 WL 2885140, at *11 (E.D.N.Y. Jul. 13, 2012) (citing *Hicks*, 593 F.3d at 165 ("[I]t is now clear that Title VII's anti-discrimination and anti-retaliation provisions are not coterminous; anti-retaliation protection is broader." (Internal quotation marks omitted)).

Here, Ms. Seale alleges that Defendants retaliated against her for her complaint about Episcopo's harassing conduct by switching her vehicle from a newer S.U.V. to an older model van and by moving her office to a location where she would no longer have access at all hours and on all days, thereby drastically changing the scheduling flexibility that she had experienced since she was hired. Without more, changes in work schedule or hours will not satisfy the pleading requirements for a Title VII retaliation claim. Although courts have found a change in work schedule to be sufficiently adverse for purposes of plausibly alleging a retaliation claim, there must be some extenuating circumstance, of which the plaintiff alleges her employer was aware, that transforms such a change from merely inconvenient to materially adverse. *See Lundy v. Town of Brighton*, 732 F. Supp. 2d 263, 276 (W.D.N.Y. 2010) (citing *Washington v. Illinois Dep't of Revenue*, 420 F.3d 658, 662 (7th Cir. 2005) (a change in work schedule requiring the mother of a disabled child to arrive at work two hours earlier is materially adverse for her, even though it would not have been for 99 percent of the staff). In *Lundy*, the plaintiff police officer alleged that she was having mental health issues and needed to seek treatment, which prevented her from participating in a training schedule mandated by her employer. There, the court observed that "[t]hough a simple change in work schedule will not ordinarily rise to the level of

a materially adverse action, when viewed in the context of the difficulties that plaintiff was experiencing at the time and the other surrounding circumstances, the schedule changes could reasonably be found to constitute adverse actions." *Lundy*, 732 F. Supp. 2d at 276.

Ms. Seale does not allege any extenuating circumstances in addition to the change in the level of flexibility of her work schedule in support of her argument that this change was materially adverse to her. However, in an abundance of caution, the Court declines to dismiss her Title VII retaliation claim. Ms. Seale alleges that the flexibility of being able to work evenings, weekends and holidays was part of the incentives and compensation for her employment. Accordingly, it is plausible that the change of the location of her office, which eliminates that flexibility, was materially adverse to Ms. Seale. For this reason, Defendants' motion for judgment on the pleadings is denied regarding Plaintiff Kelly Seale's retaliation claim under Title VII against the County and under the NYHRL against Defendants County, Riley, Episcopo and Aylward. Defendants' motion is granted regarding Ms. Seale's NYHRL retaliation claim against Defendants Bailey and Cary because she fails to allege that either of those Defendants engaged in any actions plausibly suggesting that they aided and abetted any retaliation against her. Moreover, as explained in Section II.C.3.c. of this Decision and Order, a claim for retaliation for complaining of gender discrimination is not cognizable under the Equal Protection Clause. Accordingly, Defendants' motion for judgment on the pleadings against Plaintiff Kelly Seale is granted in that regard.

### 4. Whether Plaintiff Kelly Seale Has Plausibly Alleged a Claim for Retaliation Under the First Amendment

After carefully considering the matter, the Court answers this question in the affirmative, in part, and in the negative, in part.

Defendants argue that Ms. Seale's First Amendment retaliation claim fails because she does not allege that she suffered an adverse employment action based on the same legal analysis as her gender discrimination claim. The Court agrees that Ms. Seale has failed to plausibly allege that she suffered an adverse action, but notes that the standard for pleading an adverse action is more broad on a First Amendment retaliation claim than is the standard for the same element of a gender discrimination claim.

As indicated above in Part II.C.3.a., in the context of a First Amendment retaliation claim, an adverse action is any "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights[.]" *Zelnik*, 464 F.3d at 225. This standard is broader than the standard of what constitutes an adverse action on a gender discrimination claim, but is similar to the standard for the same element of a Title VII retaliation claim, which is any action that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 207 (2d Cir. 2006) (quoting *White*, 548 U.S. at 68, 126 S. Ct. at 2415). Accordingly, in an abundance of caution, the Court finds that Ms. Seale alleges facts plausibly supporting the adverse action element of her First Amendment retaliation claim for the same reason she plausibly alleges that element of her Title VII retaliation claim.

For this reason, Defendants' motion for judgment on the pleadings regarding Plaintiff Kelly Seale's First Amendment retaliation claim against Defendants County, Riley, Episcopo and Aylward is denied. Each of these individual Defendants is alleged to have participated directly in the alleged adverse actions against Ms. Seale. Moreover, the involvement of Defendant Riley, as Sheriff, is enough to render the County liable as well. *See Jones*, 691 F.3d at 81 (a plaintiff can prevail against a municipality by showing that the policymaking official was aware of an employee's unconstitutional actions and consciously chose to ignore them).

Defendants' motion for judgment on the pleadings is granted in this regard, to the extent Ms. Seale purports to state a claim against either Defendants Bailey or Cary as there is no allegation in the Complaint that either Bailey or Cary were personally involved in any of the alleged adverse actions against Plaintiff Kelly Seale.

### 5.     Whether Plaintiff Kelly Seale Has Plausibly Alleged a Claim for Abridgement of Her Right to Vote

After carefully considering the matter, the Court answers this question in the negative, generally for the reasons stated by Defendants in their memorandum of law.  (Dkt. No. 11-1, at 23-24.)

As indicated above in Part II.C.3.b of this Decision and Order, in order to state a claim for violation of the Nineteenth Amendment, a plaintiff must allege that the defendant abridged her right to vote based on sex.  Ms. Seale has alleged no facts plausibly suggesting that her right to vote was in any way abridged.  For this reason, Defendants' motion for judgment on the pleadings against Plaintiff Kelly Seale is granted in this regard.

### 6.     Whether Plaintiff Kelly Seale Has Plausibly Alleged a § 1985 Conspiracy Claim

After carefully considering the matter, the Court answers this question in the negative, generally for the reasons stated in Defendants' memorandum of law and reply memorandum of law.  (Dkt. No. 11-1, at 24-25; Dkt. No. 15, at 9.)  The Court would only add the following brief points.

As indicated above in Part II.C.4. of this Decision and Order, where, as here, all alleged co-conspirators are employed by the same municipal entity, the intra-corporate conspiracy doctrine precludes a conspiracy claim.  *See Fitzgerald*, 2012 WL 5986547, at *24 (citing *Baines*, 288 F. Supp. 2d at 394-95 (holding that a conspiracy claim brought against "the Common Council, the Mayor, and the City Clerk" was barred by the intra-corporate conspiracy doctrine);

*Broich*, 650 F. Supp. 2d at 247 (holding that conspiracy claim against the Village Board trustees, mayor, and former and current chief of police are barred by the intra-corporate conspiracy doctrine).

To be sure, Ms. Seale's only remaining §1983 claim is for hostile work environment under the Equal Protection Clause against Defendant Episcopo. For this reason alone, her conspiracy claim fails. However, even if she plausibly alleged any of her § 1983 claims against multiple individual Defendants, her § 1985 claim still fails under the intra-corporate conspiracy doctrine.

For these reasons, Defendants' motion for judgment on the pleadings is granted as to Plaintiff Kelly Seale's § 1985 conspiracy claim.

**B.      Whether Plaintiff David Seale's Claims Survive Defendants' Motion For Judgment on the Pleadings and/or Defendants' to Dismiss For Lack of Subject Matter Jurisdiction**

For the reasons set forth below, the Court answers this question in the negative regarding all of Plaintiff David Seale's claims except his § 1983 First Amendment retaliation claim. First, Mr. Seale's Title VII claims must be dismissed for lack of subject matter jurisdiction because it is clear that he did not file a charge with the EEOC, which is a jurisdictional prerequisite for bringing a Title VII claim in federal court. Moreover, even if he had filed a charge with the EEOC, Mr. Seale fails to state claims for discrimination, disparate treatment or hostile work environment because he fails to allege that he is a member of a protected class. To be sure, the Supreme Court has held that a plaintiff who was terminated in retaliation for complaints made by his fiancée is an aggrieved person under Title VII for purposes of a retaliation claim. *See Thompson v. North Am. Stainless, LP*, — U.S. —, —, 131 S. Ct. 863, 870 (2011). However, the plaintiff in *Thompson*, unlike Mr. Seale, filed his own charge with the

EEOC.  *See Thompson*, 131 S. Ct. at 867.  Therefore, Defendants' motion to dismiss Plaintiff David Seale's Title VII claims for lack of subject matter jurisdiction is granted.

Any purported claims by Mr. Seale for discrimination, disparate treatment or hostile work environment under the NYHRL or Equal Protection Clause are likewise dismissed because, as with his identical claims under Title VII, he fails to allege that he is a member of a protected class.  Any purported retaliation claim under the Equal Protection clause must be dismissed because, as set forth in Section II.C.3.c. of this Decision and Order, such a claim is not legally cognizable.  Accordingly, Defendants' motion for judgment on the pleadings against Plaintiff David Seale is granted in this regard.

Mr. Seale's retaliation claim against all Defendants under the NYHRL must also be dismissed because he failed to file the requisite Notice of Claim against the County pursuant to New York General Municipal Law § 50-e.  While no Notice of Claim is required in order to bring claims against individual county employees who are alleged to have acted outside the scope of their employment, an aiding and abetting claim against the individual defendants will fail if liability cannot be established against the county itself, as is the case here.  *See Pratt v. Indian River Cent. Sch. Dist.*, 803 F. Supp. 2d 135, 149 (N.D.N.Y. 2011) (citing *DeWitt v. Lieberman*, 48 F. Supp. 2d 280, 293 (S.D.N.Y.1999) (noting that, when a plaintiff asserts a claim of aiding and abetting liability under the NYHRL, "liability must first be established as to the employer/principal before accessorial liability can be found as to an alleged aider and abettor")).  Accordingly, Defendants' motion for judgment on the pleadings against Plaintiff David Seale on his NYHRL retaliation claim is granted.

Mr. Seale also fails to plausibly allege a claim for violation of his Nineteenth Amendment right to vote because he fails to allege that he was prevented from voting on the

basis of sex.  Accordingly, Defendants' motion for judgment on the pleadings against Plaintiff David Seale is granted in that regard.

Mr. Seale does, however, plausibly allege a claim for First Amendment retaliation.  Mr. Seale alleges that he supported Jim Zophy in his unsuccessful run for Madison County Sheriff, an activity that is protected by the First Amendment since it is political speech, which touches on a matter of public concern.  Further, Mr. Seale alleges that, as a result of his protected activity, he was retaliated against in several ways by Defendants Bailey, Riley, Aylward and Episcopo, including being forced to return to full duty in order to avoid denial of his vacation "buy back" benefit, the denial of payment for physical therapy or rehabilitation, the denial of compensation time to attend physical therapy or rehabilitation sessions, the imposition of home confinement while out on worker's compensation, the denial of his request to switch shifts with another deputy, and the vandalization of his patrol car.  Such actions, while not as severe as termination, are of a level that might "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights[.]"  *Zelnik*, 464 F.3d at 225.  Accordingly, Defendants' motion for judgment on the pleadings regarding Plaintiff David Seale's First Amendment retaliation claim against Defendants County, Bailey, Riley, Aylward and Episcopo is denied. Each of these individual Defendants is alleged to have participated directly in the alleged adverse actions against Mr. Seale.  Moreover, the involvement of Defendant Riley, as Sheriff, is enough to render the County liable as well.  *See Jones*, 691 F.3d at 81 (a plaintiff can prevail against a municipality by showing that the policymaking official was aware of an employee's unconstitutional actions and consciously chose to ignore them).

Defendants' motion for judgment on the pleadings is granted in this regard, to the extent Mr. Seale purports to state a claim against Defendant Cary as there is no allegation in the

Complaint that Cary was personally involved in any of the alleged adverse actions against Plaintiff David Seale.[4]

Finally, Defendants' motion for judgment on the pleadings is granted as to the remaining § 1985 conspiracy claim, as liability by the Defendants on that claim is prevented by the intra-corporate conspiracy doctrine.

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion for judgment on the pleadings and/or to dismiss the complaint for lack of subject matter jurisdiction (Dkt. No. 11) is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED** that all Title VII claims asserted by Plaintiff David Seale are **DISMISSED** for lack of subject matter jurisdiction; and it is further

**ORDERED** that Defendants' motion for judgment on the pleadings is **DENIED** regarding (1) Plaintiff Kelly Seale's hostile work environment claim against the County under Title VII and NYHRL and against Defendant Episcopo under § 1983; (2) Plaintiff Kelly Seale's retaliation claim against the County under Title VII and against Defendants County, Riley, Episcopo and Aylward under NYHRL; (3) Plaintiff Kelly Seale's First Amendment retaliation claim against the County, Riley, Episcopo and Aylward;  and (4) Plaintiff David Seale's First Amendment retaliation claim against the County, Riley, Bailey, Episcopo and Aylward; and it is further

**ORDERED** that Defendants' motion for judgment on the pleadings is **GRANTED** in all

---

[4]     Nor is there any allegation that Defendant Cary established a policy or custom pursuant to which the County's employees violated Plaintiffs' constitutional rights. Accordingly, Defendant Cary is not liable to Plaintiffs in either his individual or official capacities. *See Allen v. Schiff*, — F. Supp. 2d —, —, 2012 WL 6097702, at *11-12 (S.D.N.Y. 2012).

other respects; and it is further

**ORDERED** that the Clerk of the Court shall terminate Defendant Cary as a party to this action; and it is further

**ORDERED** that Defendants file an answer to the Plaintiff's Complaint within 14 days of the date of this Memorandum-Decision & Order pursuant to Fed.R.Civ.P. Rule 12(a)(4)(a) and this case is referred back to Magistrate Judge Baxter for the setting of pretrial scheduling deadlines.

Dated: March 7, 2013
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge